[Civ. No. 21270.   Second Dist., Div. One.   Dec. 6, 1955.]

JAMES P. CUNNINGHAM, Plaintiff and Appellant; M. G. MASON, Cross-defendant and Appellant, v. CARL W. SCHMITZ et al., Respondents.

Laurence J. Rittenband for Appellants.

Erwin P. Werner for Respondents.

DORAN, J.—The plaintiff, as assignee of cross-defendant, M. G. Mason, instituted this action to recover 6,000 shares of capital stock of Americol Petroleum, Inc.   Respondents filed a cross-complaint against Cunningham and Mason, and others, seeking to be adjudged the owners of such stock and to compel the transfer of such shares on the books of the company. Subsequent to the transactions between the parties hereinafter set forth, the stock was split ten for one.

The trial court found that "on or about June 8, 1950, . . . M. G. Mason approached the defendants and cross-complainants and offered to sell them 6,000 shares of the capital stock . . . for the sum of twenty-five hundred dollars ($2500.00). At said time and place the cross-complainants (Schmitz) agreed to and did accept the offer made by M. G. Mason. On the same day the said Mason certified that he was the owner of certificate No. 12 of Americol Petroleum, Inc. for

six thousand shares fully paid and nonassessable. At said time and place the said Mason sold, assigned and delivered said certificate . . . in words as follows: 'For value received I hereby sell, assign and transfer unto Carl W. Schmitz and Dolly Schmitz, six thousand shares of the capital stock, represented by the within certificate and do hereby irrevocably constitute and appoint ———————— attorney to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises.''

It was further found that Dolly Schmitz thereafter delivered the stock certificate to the secretary of the corporation for exchange after the ten to one split; that the secretary forwarded the stock to the company's transfer agent; that thereafter Mason, who was a vice-president and managing director, ''caused said certificate to be made valueless by stamping on both sides thereof in large, bold letters, the word 'cancelled' accompanied by the initials M. G. M. Further, the said Mason refused to allow the transfer agent to exchange or transfer said certificate on the books of said company.'' The court then found that the cross-complainants Schmitz were the owners of the stock and ''entitled to have said certificate exchanged for sixty thousand shares of said corporation, and so recorded on the books.'' Cunningham and Mason have appealed from the judgment.

It is appellants' contention that the court below erred in affording equitable relief to the defendants on the cross-complaint under the maxim ''he who seeks equity must do equity''; and that the judgment ''should be reversed on the ground that the credible evidence supported a judgment for the plaintiff.''

Appellants' version of the transaction is that Mason, friendly with Mr. and Mrs. Schmitz, ''offered to sell the (Schmitz) automobile for her and borrow $2,500.00 from the proceeds of the sale to meet the (company) payroll, such loan to be repaid within a year with a bonus of $350.00. Mrs. Schmitz agreed to this proposal.'' Appellants insist that, as security for the loan Mason, on June 8, 1950, transferred the stock certificate for 6,000 shares, the stock then selling for $1.00 per share. The car was sold and Mason got the $2,500. It is claimed that thereafter Mason repaid $2,200 of the loan.

Mrs. Schmitz' testimony in substance denies Mason's version of the alleged loan, and maintains that the sale was absolute, stating that Mason on numerous occasions offered to repurchase the stock, particularly on January 5, 1951,

when Mason presented a receipt-agreement providing for a "repurchase" of the stock by Mason for $2,850, which Mrs. Schmitz refused to sign. Mason admitted on the witness stand that the only writing made on the occasion of the transfer was the assignment on the certificate, and the $2,500 check turned over by Mrs. Schmitz. The alleged loan was oral, Mason's testimony in reference thereto being, "And I says, 'If I don't pay the money back within a year, Dolly, that is your certificate. You own it. And if I do, I want the certificate back, naturally. That is collateral.' She used the word 'collateral' twenty times."

As will be seen from the foregoing résumé, the testimony was in direct conflict as to the nature of the transaction. Not only was the evidence in conflict but the trial judge observed that "This is one of the worst (cases) I have ever listened to as far as perjury is concerned. . . . In this case the court is satisfied that both sides have lied like troupers without any remorse of conscience."

In this state of the record, a reviewing court is not called upon to attempt a revaluation of the evidence. ▇ As stated in *Norden* v. *Hartman,* 134 Cal.App.2d 333, 369 [285 P.2d 977], "The fact that there is conflicting evidence merely brings the case within the well established rule that every such conflict must, on appeal, be resolved in favor of the trial court's findings 'which are deemed conclusive.' " In the instant case it cannot be said that the trial court's findings are without substantial support in the record.

As pointed out in the respondents' brief, "Section 2466 of the Corporations Code provides the manner in which a transfer of stock may be made. The transfer in question was made under subsection (a) thereof." The transfer of the stock by Mason, as evidenced by the assignment on the stock certificate, was absolute. ▇ The trial court, after hearing the evidence and observing the demeanor of the witnesses, came to the conclusion that the transaction was exactly what it purported to be, namely, an absolute sale. This was a question of fact to be decided by the trial court, and no valid reason has been presented which would justify interference with such decision.

The judgment is affirmed.

White, P. J., and Nourse (Paul), J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.